UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| CHARLES COLOMBE, Individually and as an Officer of BBC Entertainment, Inc., a dissolved Minnesota corporation, | * * * * | CIV 11-3002-RAL |
| Plaintiff, | * * | OPINION AND ORDER REGARDING MOTION TO DISMISS |
| vs. | * * | |
| ROSEBUD SIOUX TRIBE, ROSEBUD SIOUX TRIBAL COURT, and JUDGE SHERMAN MARSHALL, in his Official and Individual Capacities, | * * * * * | |
| Defendants. | * | |

## I. INTRODUCTION

Plaintiff Charles Colombe, a shareholder, director, and officer of BBC Entertainment Inc. ("BBC") filed a Complaint (Doc. 1) against Defendants Rosebud Sioux Tribe, Rosebud Sioux Tribal Court, and Judge Sherman Marshall (collectively "Defendants"). Plaintiff seeks de novo review of a tribal court decision regarding a casino management contract dispute and an injunction prohibiting Defendants from continuing a tribal court action to pierce the corporate veil of BBC. Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. (Doc. 5). Plaintiff filed a Memorandum in Opposition (Doc. 8) to Defendants' motion, and Defendants submitted a reply brief. (Doc. 13).

## II. FACTS

The Rosebud Sioux Tribe ("Tribe") is a federally recognized Indian tribe that owns and operates a casino on tribal trust land within the exterior boundaries of the Rosebud Sioux Reservation. BBC is a now dissolved Minnesota corporation that was owned in part by tribal member Charles Colombe. In June of 1994, the Tribe and BBC entered into a five-year casino

management contract[1] ("Contract") pursuant to the Indian Gaming Regulatory Act of 1988, 25 U.S.C. §§ 2701 et seq. ("IGRA"). Article 6.4(c)(5) of the Contract required that BBC fund an initial Operation Expense Reserve ("OER") account. (Doc. 9-1 at 37-38; Doc. 9-7 at 20). Although BBC never made an initial contribution to the OER account, the Tribe and BBC reached a subsequent oral agreement to contribute 7.5% of the casino's net profits to the account each month. (Doc. 9-4 at 4; Doc. 9-7 at 24-25). At conclusion of the contract, BBC withdrew $415,857 from the OER account based on BBC's belief that it was entitled to 35% of the OER account balance, consistent with the Contract's division of net profits with 65% going to the Tribe and 35% to BBC. (Doc. 9-4 at 4).

The Tribe disputed BBC's withdrawal of the $415,857 and brought suit against BBC in tribal court. Before Special Tribal Court Judge B.J. Jones, the Tribe argued that the oral modification concerning how to fund the OER account did not comport with IGRA and its implementing regulations. (Id. at 4-5). IGRA established a statutory basis for the regulation and operation of gaming by Indian tribes and created the National Indian Gaming Commission ("NIGC") to oversee Indian gaming. 25 U.S.C. § 2702. Subject to the approval of the Chairman of the NIGC, Indian tribes may enter into management contracts for the operation and management of a tribe's gaming facilities. 25 U.S.C. § 2711. Once the NIGC Chairman has approved a casino management contract, any attempt by the parties to modify the contract is void without further Chairman approval. 25 C.F.R. 535.1. While the NIGC Chairman approved the Contract in June of 1994, he did not approve the later oral modification concerning funding the

---

[1] A "management contract" is "any contract, subcontract, or collateral agreement between an Indian tribe and a contractor or between a contractor and a subcontractor if such contract or agreement provides for the management of all or part of a gaming operation." 25 C.F.R. § 502.15.

2

OER account. (Doc. 9-1 at 6). The Tribe thus contended that the modification was void and that because BBC did not make an initial contribution to the OER account, BBC was not entitled to any of the money in the account. Judge Jones disagreed with the Tribe, instead finding that "nothing in the agreement prohibited the parties from using their respective net earnings to fund an account such as the OER account . . ." (Doc. 9-2 at 11).

The Tribe appealed Judge Jones's decision to the Supreme Court of the Rosebud Sioux Tribe. (Doc. 9-4). In its appellate brief, BBC argued that IGRA does not create a private right of action, and that jurisdiction to determine the legality of the Contract modification rested with the NIGC rather than the tribal court. (Doc. 9-3). The Rosebud Supreme Court found that the oral agreement to fund the OER account through mutual monthly contributions was void for failure to obtain the approval of the NIGC and remanded the case to Judge Jones for an accounting. (Doc. 9-4). The Court did not directly address BBC's jurisdictional argument. Id.

The Tribe subsequently sought a rehearing en banc, contending that the Rosebud Supreme Court's order remanding the case to Judge Jones contained certain mistakes of law and fact. (Doc. 9-6). The Rosebud Supreme Court granted the motion for a rehearing en banc, but limited the rehearing "to the sole issue of the appropriate remedy for BBC Entertainment Inc.'s . . . breach of the management contract in regard to the funding of the [OER] account." Id. at 2. In its Optional Brief on Rehearing, BBC expressed dismay that the Rosebud Supreme Court had failed to discuss BBC's jurisdictional argument in its initial remand order, and again argued that the Court did not have jurisdiction to determine whether there had been an illegal modification of the Contract. (Doc. 9-5). Following the rehearing en banc, the Rosebud Supreme Court issued a Summary Order that affirmed the Court's earlier remand to Judge Jones without discussing BBC's jurisdictional argument. (Doc. 9-6).

On October 16, 2007, Judge Jones granted the Tribe a judgment against BBC in the amount of $399,353.61, plus interest accrued from August 15, 1999, in the amount of $127,793.15. (Doc. 9-7). BBC filed a motion for a new trial (Doc. 9-9), which was denied for failure to adhere to the Rosebud Rules of Civil Procedure. (Doc. 9-10). BBC did not appeal the judgment.

On February 17, 2009, the Tribe filed a tribal court complaint against BBC and two of its owners, Wayne Boyd and Charles Colombe. (Doc. 5-1). The complaint sought to pierce BBC's corporate veil and to hold Boyd and Colombe personally liable for the earlier judgment against BBC. (Doc. 5-1). On March 24, 2009, Colombe responded with a motion to dismiss arguing, among other things, that the underlying judgment against BBC was void because the tribal court violated IGRA and illegally amended an NIGC approved management contract. (Doc. 5-6). Tribal Judge Sherman Marshall denied Colombe's motion to dismiss (Doc. 5-25) and later ordered Colombe to respond to written discovery by January 22, 2011. (Doc. 5-46). Colombe then filed the present complaint in federal district court.

Colombe now asks this Court to vacate the October 16, 2007 judgment against BBC on the grounds that the tribal court had no jurisdiction to find that there had been an illegal modification of the Contract and that the IGRA created no private right of action for the Tribe to bring against BBC. Colombe also seeks a judgment on the merits finding that BBC did not violate the Contract. Finally, Colombe seeks an injunction against Defendants from continuing any litigation against Colombe that relates to the October 16, 2007 judgment. Defendants have filed a Motion to Dismiss, arguing that this Court does not have subject matter jurisdiction over the case, that Defendants have not waived their sovereign immunity, and that Colombe has failed to exhaust his tribal court remedies.

4

## III. DISCUSSION

### A. Colombe's Right to Pursue Claims in the Name of BBC

As a preliminary matter, this Court must determine whether Colombe has standing to assert claims in the name of BBC, a dissolved Minnesota corporation. Minnesota Statute § 302A.783 provides that "[a]fter a corporation has been dissolved, any of its former officers, directors, or shareholders may assert or defend, in the name of the corporation, any claim by or against the corporation." Minn. Stat. § 302A.783; see also Firstcom, Inc. v. Qwest Corp., No. Civ. 04-995 ADM/AJB, 2004 WL 1402564, at *2 (D. Minn. June 21, 2004) ("The text of [section 302A.783] is clear and unambiguous: former shareholders may assert *any* claim in the name of the corporation."). Because BBC was dissolved and Colombe was a shareholder, director, and officer of BBC, he has standing to maintain the present action.

### B. Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." Myers v. Richland Cnty., 429 F.3d 740, 745 (8th Cir. 2005) (citation omitted). Here, no diversity of citizenship exists under 28 U.S.C. § 1332 because Indian tribes are neither foreign states nor citizens of any state. See Gaming World Int'l v. White Earth Band of Chippewa Indians, 317 F.3d 840, 847 (8th Cir. 2003). Federal subject matter jurisdiction under 28 U.S.C. § 1331 requires the presence of a federal question. 28 U.S.C. § 1331; Oglala Sioux Tribe v. C & W Enter., Inc., 487 F.3d 1129, 1130 (8th Cir. 2007) (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 513 (2006)). Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Courts generally consider a claim to have arisen under federal law "if a federal cause of action appears on the face

5

[of] a well-pleaded complaint." Oglala Sioux Tribe, 487 F.3d at 1131 (citing Oklahoma Tax Comm'n v. Graham, 489 U.S. 838, 840-841 (1989)).

Colombe, relying principally on Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians, 471 U.S. 845 (1985), contends that the Court has jurisdiction under § 1331 because he is asserting that federal law has divested the Tribe of jurisdiction to determine whether the Contract was illegally modified. In Nat'l Farmers Union, a member of an Indian tribe obtained a default judgment against a non-Indian school district in tribal court. Id. at 847-48. The school district and its insurer then filed an action in federal district court seeking to enjoin the tribal member from executing on the default judgment. Id. at 848. The school district and its insurer contended that "the right which they assert—a right to be protected against an unlawful exercise of Tribal Court judicial power—has its source in federal law because federal law defines the outer boundaries of an Indian tribe's power over non-Indians." Id. at 851.

The United States Supreme Court in Nat'l Farmers Union found that the district court was correct in concluding that a federal court "may determine under § 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction." Id. at 853. The Court explained:

> Because petitioners contend that federal law has divested the Tribe of this aspect of [civil jurisdiction], it is federal law on which they rely as a basis for the asserted right of freedom from Tribal Court interference. They have, therefore, filed an action 'arising under' federal law within the meaning of § 1331.

Id. at 852-53.

The United States Court of Appeals for the Eighth Circuit has applied the principles of Nat'l Farmers Union in a number of cases, two of which are particularly pertinent to the present action. See Gaming World Int'l, 317 F.3d 840; Bruce H. Lien Co. v. Three Affiliated Tribes, 93 F.3d 1412 (8th Cir. 1996). The Bruce H. Lien case involved a casino management contract

6

between a company and an Indian tribe. Bruce H. Lien, 93 F.3d at 1414. After a disagreement over the management contract arose, the company filed a demand for arbitration. Id. at 1415. The Tribe responded by filing an action in tribal court seeking a declaration that the management contract was void under tribal law and seeking an injunction to enjoin the arbitration proceedings until the tribal court had an opportunity to rule on the Tribe's complaint. Id. at 1415-16. Following a failed attempt to have the tribal court action dismissed for lack of jurisdiction, the company filed suit in federal district court requesting a preliminary injunction to enforce the arbitration proceedings. Id. at 1416. The Tribe moved to dismiss the federal action for lack of subject matter jurisdiction, claiming that the Tribe had not waived its sovereign immunity and that the company had failed to exhaust tribal remedies. Id.

On appeal, the Eighth Circuit found that the district court had properly exercised federal question jurisdiction over the matter. Id. at 1421. The Court stated:

> While the issue of the contract's validity does not raise a federal question per se, certainly there are aspects of the dispute which do. Particularly where the entire association between the parties (and their various disputes) arise under IGRA, and where the management agreement at issue, once approved, remains so until disapproved by the NIGC. Further, this case is being directed to the Tribal Court and exhaustion within that system. The existence of tribal jurisdiction itself presents a federal question within the scope of 28 U.S.C. § 1331.

Id. (citing Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 15 (1987); Nat'l Farmers Union, 471 U.S. at 852-53).

The Eighth Circuit encountered similar issues in Gaming World. In Gaming World, a Delaware corporation entered into a casino management contract with an Indian tribe. Gaming World, 317 F.3d at 842. Sometime thereafter, the Tribe terminated the contract and filed an action in tribal court seeking a declaration that the contract was void for failure to obtain proper

7

federal approval. Id. at 845-846. The corporation filed a response challenging the tribal court's jurisdiction and denying the tribe's allegations. Id. at 846. One month later, the corporation commenced litigation in federal district court seeking a declaratory judgment of the contract's validity and an order compelling arbitration. Id. The Tribe appeared in federal district court, disputed the validity of the contract, and asserted that the district court lacked subject matter jurisdiction. Id. After the district court found that it had jurisdiction under § 1331 and ordered the parties to arbitrate, the Tribe appealed. Id.

The Eighth Circuit in Gaming World determined that the corporation's action arose under federal law because it raised issues concerning the scope of tribal jurisdiction. Id. at 848. The Court compared the jurisdictional facts in Gaming World to those in Bruce H. Lien, and noted that both cases involved federal court challenges to a tribal court's jurisdiction. Id. "[A]n action filed in order to avoid tribal jurisdiction," the Court explained, "necessarily asserts federal law." Id. (citing Nat'l Farmers Union, 471 U.S. at 853).[2]

---

[2] The Court in Gaming World also identified a second basis for federal question jurisdiction. The Court explained that, in terms of federal question jurisdiction, "there is a significant distinction between ordinary contract disputes involving Indian tribes, and those raising issues in an area of extensive federal regulation." Id. at 847 (citations omitted). By way of illustration, the Court observed that in Comstock Oil & Gas, Inc. v. Ala. & Coushatta Indian Tribes, 261 F.3d 567 (5th Cir. 2001), the Fifth Circuit found that the "'extensive regulatory scheme' governing tribal oil and gas leases conferred federal jurisdiction over a contract dispute between a tribe and two oil companies." Gaming World, 317 F.3d at 848 (citing Comstock, 261 F.3d at 574-75). The Court determined that "the regulatory scope of IGRA is similarly far reaching in its supervisory power over Indian gaming contracts." Id. Because the complaint in Gaming World raised issues under the "extensive regulatory framework of IGRA," it was more than a routine contract action and was sufficient to invoke federal question jurisdiction. Id.; see also Tamiami Partners v. Miccosukee Tribe of Indians, 63 F.3d 1030, 1047 (11th Cir. 1995) (concluding that IGRA and NIGC regulations are incorporated into casino management contracts by law); William C. Canby, American Indian Law in a Nutshell 371 (5th ed. 2009) ("Claims based on management contracts have generally been held to arise under federal law for purposes of federal jurisdiction.").

8

Nat'l Farmers Union and its Eighth Circuit progeny make clear that the interpretation of federal law plays a critical role in the resolution of cases that involve the question of whether a tribal court has overstepped the boundaries of its jurisdiction. Here, the gravamen of Colombe's complaint is that certain provisions of IGRA and NIGC regulations have divested the Tribe of jurisdiction to determine whether there was an illegal modification of the management contract. Colombe thus has filed an action "arising under" federal law within the meaning of § 1331. See Nat'l Farmers Union, 471 U.S. at 853; Gaming World, 317 F.3d at 848 ("It is well established that the scope of tribal court jurisdiction is a matter of federal law."); TTEA v. Ysleta Del Sur Pueblo, 181 F.3d 676, 683 (5th Cir. 1999) (court had jurisdiction to determine whether tribal court properly exercised jurisdiction over 25 U.S.C. § 81 claim); Kerr-McGee Corp. v. Farley, 115 F.3d 1498, 1501 (10th Cir. 1997) ("The scope of a tribal court's jurisdiction is a federal question over which federal district courts have jurisdiction."); Bruce H. Lien, 93 F.3d at 1421-22; Oglala Sioux Tribe v. C & W Enters., 516 F.Supp.2d 1039, 1042 (D.S.D. 2007) ("Both National Farmers Union and Bruce Lien recognize that because tribal sovereignty is limited only by federal law, any challenges to the tribal court's jurisdiction necessarily arises under federal law."); Canby, supra at 244 (5th ed. 2009) (explaining that as a consequence of National Farmers Union, "anyone asserting an absence of tribal power under federal statute, treaty, or the 'common law' of federal Indian law has an entree into federal court.").

**C. Sovereign Immunity**

A motion to dismiss on sovereign immunity grounds may be analyzed under Rule 12(b)(1). Hagen v. Sisseton-Wahpeton Cmty. Coll., 205 F.3d 1040, 1043 (8th Cir. 2000). However, the question of whether the Tribe's sovereign immunity bars Colombe from bringing this suit is a jurisdictional issue separate from subject matter jurisdiction. See In re Prairie Island

9

Dakota Sioux, 21 F.3d 302, 305 (8th Cir. 1994) ("We find, therefore, that sovereign immunity is a jurisdictional consideration separate from subject matter jurisdiction . . ."); Calvello v. Yankton Sioux Tribe, 899 F. Supp. 431, 435 (D.S.D. 1995) (determining first that the court had subject matter jurisdiction and then noting that "[t]he Court must next consider, however, the separate jurisdictional issue of whether [the plaintiff's] suit against the Tribe is barred by the doctrine of sovereign immunity.").

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." Amerind Risk Mgmt. Corp. v. Malaterre, 633 F.3d 680, 685 (8th Cir. Feb. 25, 2011) (quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978)). "Thus, as a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Id. (quoting Kiowa Tribe of Okla. V. Mfg. Techs., Inc., 523 U.S. 751, 754 (1998)). "A waiver of sovereign immunity may not be implied, but must be unequivocally expressed by either the Tribe or Congress." Id. (quoting Rupp v. Omaha Indian Tribe, 45 F.3d 1241, 1244 (8th Cir. 1995)).

While a tribe may waive its sovereign immunity by contract, it must do so with the "requisite clarity." See C & L Enters., Inc. v. Citizen Band of Potawatomi Indian Tribe, 532 U.S. 411, 418 (2001) ("[T]o relinquish its immunity, a tribe's waiver must be clear.") (citations omitted). This does not mean, however, that the contract must contain "'magic words' stating that the tribe hereby waives its sovereign immunity." Rosebud Sioux Tribe v. Val-U Constr. Co. of S.D., 50 F.3d 560, 563 (8th Cir. 1995); Sokaogon Gaming Enter. v. Tushie-Montgomery Ass'n, 86 F.3d 656, 660 (7th Cir. 1996) (explaining that a tribe may waive its sovereign immunity in a contract without actually using the words "sovereign immunity."); Canby, supra at 110

10

("Although the intention to waive must be clear, the waiver need not include the precise term "sovereign immunity.").

In C& L Enterprises, the Supreme Court found that a tribe waived its sovereign immunity by entering into a standard form construction contract that contained a provision requiring arbitration of all claims "arising out of or relating to the Contract" and provided that any arbitration awards could be reduced to judgment in "accordance with applicable law in any court having jurisdiction thereof." C& L Enterprises, 532 U.S. at 418-419. The Eighth Circuit reached a similar result in Val-U Construction. See Val-U Constr., 50 F.3d at 562 (finding that the following language in a contract was a clear expression of waiver of a tribe's sovereign immunity: "All questions of dispute under this Agreement shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.").

Article 21 of the Contract at issue provides in pertinent part:

> Should litigation be necessary to enforce the obligations of this agreement, the parties agree that such litigation shall not be brought in the courts of any state. Instead, access to the courts, shall be as follows:
> (a) Any litigation relating to a dispute over the terms, rights or obligations set forth in this agreement shall first be initiated in Rosebud Sioux Tribal Court.
> (b) The parties agree that in the event of a dispute requiring court intervention, either party may apply to the Tribal Court for appointment of a special judge to preside over any such disputes. The Tribal Court shall immediately appoint such special judge to preside over disputes involving this contract or the management of the project. The special judge must be approved by both parties to this agreement prior to presiding over the case or controversy. The special judge must be law trained, and the parties hereto will share equally in any compensation to be paid to the special judge incurred in the course of his duties on the case.

> (c) Should either party request the appointment of a special judge to hear a dispute or settle a controversy, said judge must be agreed upon by both parties and selected and appointed within seven days of the application by either party. The parties may waive or extend the time limit included herein by mutual agreement.
> (d) With the use of the special judge as provided herein, the Rosebud Sioux Tribal Court shall have initial jurisdiction over all disputes arising with respect to this contract, subject only to those exceptions as set forth in subparts (f) and (g) hereto.
> (e) Regular appeals from the decisions of the special judge for the Rosebud Sioux Tribal Court shall be taken as provided in the Rosebud Sioux Tribal Rules of Appellate Procedure.
> (f) The jurisdiction of the Rosebud Sioux Tribal Court system with respect to disputes related to this contract, shall extend through the Tribal Trial Court and Appellate Court level. Tribal Court remedies must be exhausted before any party may initiate suit in Federal Court (except as set forth herein and in Section (g) below). Once Tribal Court remedies have been exhausted, the jurisdiction of the Tribal Court shall cease, permitting any party to bring suit before the United States Federal District Court, and Tribal Court jurisdiction will terminate for purposes of allowing the Federal Court to entertain a de novo review of the case on its merits. The parties hereto expressly intend that the Federal Court shall not be limited to a review of Tribal Court jurisdiction, but shall hear the case on its underlying merits on a de novo basis. The Federal Court may enter such relief on the merits of the controversy as it deems just and equitable, or as properly requested by either party. Upon adoption and execution of this contract, the provisions of this section shall be considered as an amendment to the tribal judicial code, applying <u>solely</u> to disputes arising under this contract and establishing the jurisdiction of the Rosebud Sioux Tribal Court as set forth herein with respect to disputes under this contract.

(Doc. 9-1 at 63-65). The plain language of the Contract contains a waiver of sovereign immunity upon exhaustion of tribal court remedies. Section (f) of Article 21 makes clear that either party to the Contract may bring suit in federal district court to obtain a de novo review of the dispute on its merits, following exhaustion of tribal court remedies. By agreeing to be subject to suit in federal district court, a tribe agrees to waive its sovereign immunity. See <u>Sokaogon Gaming</u>

Enter., 86 F.3d at 659 ("To agree to be sued is to waive any immunity one might have from being sued."); Val-U Constr., 50 F.3d at 562 (explaining that by agreeing to the arbitration clause and its provisions for dispute resolution, the tribe clearly intended to waive its sovereign immunity, as "[b]y definition such disputes could not be resolved by arbitration if one party intended to assert sovereign immunity as a defense.") (citation omitted).

Defendants argue, however, that the waiver of sovereign immunity contained in Article 21 of the Contract is void for failure to comply with section 4-2-1 of the Rosebud Sioux Tribe's Law and Order Code. Section 4-2-1 states:

> SOVEREIGN IMMUNITY- Except as required by federal law or the Constitution and bylaws of the Tribe or specifically waived by a resolution or ordinance of the Tribal Council making specific reference to such, the Rosebud Sioux Tribe and its officers and employees shall be immune from suit in any civil action for any liability arising from the performance of their official duties.

(Doc. 13-1). This unequivocal language makes clear that a waiver of sovereign immunity must comport with the requirements of section 4-2-1 to be valid.

For a waiver of sovereign immunity to be effective it must comply with tribal law. See Memphis Biofuels, LLC v. Chickasaw Nation Indus., 585 F.3d 917, 922 (6th Cir. 2009) (tribal corporation's contract containing express waiver of sovereign immunity was ineffective without approval of the board by resolution, as required by tribal law); Sanderlin v. Seminole Tribe of Fla., 243 F.3d 1282, 1288 (11th Cir. 2001) (rejecting argument that tribal official had authority to waive immunity because "[s]uch a finding would be directly contrary to the explicit provisions of the Tribal Constitution"); Winnebago Tribe of Neb. v. Kline, 297 F. Supp. 2d 1291, 1303 (D. Kan. 2004) ("[F]or a waiver of sovereign immunity to be effective, the waiver must be in compliance with tribal law."); World Touch Gaming v. Massena Mgmt. Corp., 117 F. Supp. 2d

13

271, 275 (N.D.N.Y. 2000) (holding that a contractual waiver of sovereign immunity was invalid where tribal constitution and civil judicial code established that the only way the tribe could waive its sovereign immunity was through a tribal council resolution). Colombe does not point to any Tribal Council resolution or ordinance that waives the Tribe's sovereign immunity with respect to the Contract. Nor does Colombe direct the Court to any portion of the Tribal Constitution that would support Colombe's argument that Defendants have waived their sovereign immunity. However, Article 24.15 of the management contract seems to indicate that the Tribe did, in fact, execute a resolution that may have waived its sovereign immunity. Article 24.15 reads:

> 24.15 <u>Tribal Resolution.</u> The Resolution attached hereto as Exhibit "H" sets forth the scope of authority of the Tribal officials who have signed this Agreement on behalf of the Tribe and identifies the provision of the Tribal organic document which authorizes this Agreement and its execution.

(Doc. 9-1 at 74). Unfortunately, "Exhibit 'H'" has not been included in any of the filings in this Court.

Some authority, including two cases decided by this Court, indicate that tribal sovereign immunity is waived in the narrow category of cases where compliance with IGRA's provisions is at issue and where only declaratory or injunctive relief is sought. See <u>Montgomery v. Flandreau Santee Sioux Tribe</u>, 905 F. Supp. 740, 745 (D.S.D. 1995) ("The Court has subject matter jurisdiction to consider whether defendants have complied with the Indian Gaming Regulatory Act."); <u>Maxam v. Lower Sioux Indian Cmty. of Minn.</u>, 829 F. Supp. 277, 281 (D. Minn 1993) ("[W]hen an Indian tribe engages in gaming governed by the IGRA, it waives its immunity to suit for the narrow purpose of determining compliance with the requirements of the Act."); <u>Ross v. Flandreau Santee Sioux Tribe</u>, 809 F. Supp. 738, 745 (D.S.D. 1992) ("Sovereign

14

immunity cannot be invoked to preclude an inquiry into whether the Tribe has complied with the IGRA. Engaging in gaming pursuant to the IGRA constitutes an express waiver of sovereign immunity on the issue of compliance with the IGRA."); see also Calvello, 899 F. Supp. at 438 (citing Maxam and Ross and explaining that these cases "stand at most for the proposition that federal courts may find a waiver of tribal sovereign immunity for the purpose of enforcing the provisions of the IGRA were prospective injunctive relief, and not monetary relief, is sought."); Canby, supra at 114 (5th ed. 2009) ("Most of the lower courts to consider the question have held that a tribe, by conducting gaming under the IGRA, waives sovereign immunity for the limited purpose of enforcing compliance with the act.").

These decisions are not universally accepted, however. See Florida v. Seminole Tribe of Florida, 181 F.3d 1237, 1242-1243 (11th Cir. 1999) (finding that Ross and Maxam were wrongly decided because they are inconsistent with Supreme Court decisions holding that waivers of tribal sovereign immunity "cannot be implied on the basis of a tribe's actions, but must be unequivocally expressed."); Crosby Lodge, Inc. v. Nat'l Indian Gaming Ass'n, No. 3:06-CV-00657, 2007 WL 2318581, at *4 (D. Nev. Aug. 10, 2007) (rejecting the reasoning in Ross and Maxam); Davids v. Coyhis, 869 F.Supp. 1401, 1407-08 (E.D. Wis. 1994) (rejecting Ross and Maxam because a waiver of sovereign immunity "*cannot be implied* but must be unequivocally expressed."); Cohen's Handbook of Federal Indian Law, § 12.07[3] n.212 (2005 ed.) (explaining that Ross, Maxam, and Montgomery, "seem inconsistent with the rules requiring waivers of sovereign immunity to be clearly expressed.").

This Court does not have Exhibit "H" to the Contract, which is pivotal to determining whether there is a waiver of sovereign immunity. It is Colombe who has the burden of proving that "jurisdiction does in fact exist." Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990).

15

Thus, this Court will give Colombe fourteen days (14) from the date of this opinion to file Exhibit "H," after which the Court will decide any remaining issues framed by Defendants' Motion to Dismiss. Therefore, it is hereby

ORDERED that Plaintiff has fourteen (14) calender days from the date of this order to file Exhibit "H" to the Contract.

Dated August 16, 2011.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE