FILED
SEP 23 2011
[clerk signature]

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| CHARLES COLOMBE, Individually and as an Officer of BBC Entertainment, Inc., a dissolved Minnesota corporation, | * * * * | CIV 11-3002-RAL |
| Plaintiff, | * * * | OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |
| vs. | * * | |
| ROSEBUD SIOUX TRIBE, ROSEBUD SIOUX TRIBAL COURT, and JUDGE SHERMAN MARSHALL, in his Official and Individual Capacities, | * * * * * * | |
| Defendants. | * | |

## I. INTRODUCTION

Plaintiff Charles Colombe, a shareholder, director, and officer of BBC Entertainment, Inc. ("BBC") filed a Complaint (Doc. 1) against Defendants Rosebud Sioux Tribe, Rosebud Sioux Tribal Court, and Judge Sherman Marshall (collectively "Defendants"). Plaintiff seeks de novo review of a tribal court decision regarding a casino management contract dispute and an injunction prohibiting Defendants from continuing a tribal court action to pierce the corporate veil of BBC. Defendants seek, and Plaintiff opposes, dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. (Doc. 5, 8, 13). On August 17, 2011, this Court issued an Opinion and Order Regarding Motion to Dismiss[1] (Doc. 21) resolving part of the issues and requiring submission of a tribal resolution missing from the record that affected the Court's analysis of waiver of tribal sovereign immunity. Since that time,

---

[1] For the sake of completeness and to aid understanding of the Court's ruling, this Opinion and Order repeats in part the content of the August 17, 2011 Opinion and Order.

both parties filed additional material relating to the issues in this case. (See Doc. 27, 28, 32). This Court now denies in part the motion to dismiss.

## II. FACTS

The Rosebud Sioux Tribe ("Tribe") is a federally recognized Indian tribe that owns and operates a casino on tribal trust land within the exterior boundaries of the Rosebud Sioux Reservation. BBC is a now-dissolved Minnesota corporation that was owned in part by tribal member Charles Colombe. In June of 1994, the Tribe and BBC entered into a five-year casino management contract[2] ("Contract") pursuant to the Indian Gaming Regulatory Act of 1988, 25 U.S.C. §§ 2701 et seq. ("IGRA"). Article 6.4(c)(5) of the Contract required that BBC fund an initial Operation Expense Reserve ("OER") account. (Doc. 9-1 at 37-38; Doc. 9-7 at 20). Although BBC never made an initial contribution to the OER account, the Tribe and BBC reached a subsequent oral agreement to contribute 7.5% of the casino's net profits to the account each month. (Doc. 9-4 at 4; Doc. 9-7 at 24-25). At conclusion of the contract, BBC withdrew $415,857 from the OER account based on BBC's belief that it was entitled to 35% of the OER account balance, consistent with the Contract's division of net profits with 65% going to the Tribe and 35% to BBC. (Doc. 9-4 at 4).

The Tribe disputed BBC's withdrawal of the $415,857 and brought suit against BBC in tribal court. Before Special Tribal Court Judge B.J. Jones, the Tribe argued that the oral modification concerning how to fund the OER account did not comport with IGRA and its implementing regulations. (Id. at 4-5). IGRA established a statutory basis for the regulation and operation of gaming by Indian tribes and created the National Indian Gaming Commission

---

[2] A "management contract" is "any contract, subcontract, or collateral agreement between an Indian tribe and a contractor or between a contractor and a subcontractor if such contract or agreement provides for the management of all or part of a gaming operation." 25 C.F.R. § 502.15.

2

("NIGC") to oversee Indian gaming. 25 U.S.C. § 2702. Subject to the approval of the Chairman of the NIGC, Indian tribes may enter into management contracts for the operation and management of a tribe's gaming facilities. 25 U.S.C. § 2711. Once the NIGC Chairman has approved a casino management contract, any attempt by the parties to modify the contract is void without further Chairman approval. 25 C.F.R. § 535.1. The NIGC Chairman approved the Contract in June of 1994, but no one sought approval of the later oral modification concerning funding the OER account. (Doc. 9-1 at 6). The Tribe thus contended that the modification was void and that because BBC did not make an initial contribution to the OER account, BBC was not entitled to any of the money in the account. Judge Jones disagreed with the Tribe, instead finding that "nothing in the agreement prohibited the parties from using their respective net earnings to fund an account such as the OER account . . ." (Doc. 9-2 at 11).

The Tribe appealed Judge Jones's decision to the Supreme Court of the Rosebud Sioux Tribe. (Doc. 9-4). In its appellate brief, BBC argued that IGRA does not create a private right of action and suggested that jurisdiction to determine the legality of the Contract modification rested with the NIGC rather than the tribal court.[3] (Doc. 9-3). The Rosebud Supreme Court

---

[3] The jurisdictional argument in BBC's first appellate brief was as follows:
> If the Tribe had a claim that BBC violated IGRA because of a subsequent agreement which consisted of an agreement that both parties would delay full payment of their share of net revenues, the Tribe had a potential remedy, if they had been truly aggrieved. That remedy was to complain to the NIGC and to seek relief from that agency. That was not done, and the reason it was not done might appear obvious to even the casual observer. 25 USC § 2713(3) provides the procedure applicable to violations which replaces the jurisdiction of courts.

(Doc. 9-3 at 15). BBC's brief then discussed § 2713 and stated that "[i]t is clear from § 2713 that it is the agency that has authority to act on issues relating to the "'modification or termination of any management contract.'" (Id. at 16 quoting § 2713(3)). In its Optional Brief on Rehearing, BBC stated

> This Court did not discuss the jurisdictional issues raised by BBC

found that the oral agreement to fund the OER account through mutual monthly contributions was void for failure to obtain the approval of the NIGC and remanded the case to Judge Jones for an accounting. (Doc. 9-4). The Court did not directly address BBC's jurisdictional argument. Id.

The Tribe subsequently sought a rehearing en banc, contending that the Rosebud Supreme Court's order remanding the case to Judge Jones contained certain mistakes of law and fact. (Doc. 9-6). The Rosebud Supreme Court granted the motion for a rehearing en banc, but limited the rehearing "to the sole issue of the appropriate remedy for BBC Entertainment, Inc.'s . . . breach of the management contract in regard to the funding of the [OER] account." Id. at 2. In its optional brief on rehearing, BBC asserted that the Rosebud Supreme Court had failed to discuss BBC's jurisdictional argument in its initial remand order and argued that only the NIGC had jurisdiction to determine whether there had been an illegal modification of the Contract. (Doc. 9-5). Following the rehearing en banc, the Rosebud Supreme Court issued a Summary Order that affirmed the Court's earlier remand to Judge Jones without discussing BBC's jurisdictional argument. (Doc. 9-6).

On October 16, 2007, Judge Jones granted the Tribe a judgment against BBC in the amount of $399,353.61, plus interest accrued from August 15, 1999, in the amount of $127,793.15. (Doc. 9-7). BBC filed a motion for a new trial (Doc. 9-9), which was denied for failure to adhere to the Rosebud Rules of Civil Procedure. (Doc. 9-10). BBC did not appeal the

---

in its appeal brief. That is unfortunate because BBC understands that the IGRA does not create jurisdiction for any court to determine [whether changes to a management contract constitute a modification such that the changes must be approved by the NIGC]. This Court's reasoning on how it has jurisdiction to rule on that issue would thus have been helpful in framing this memorandum.

(Doc. 9-5).

judgment.

On February 17, 2009, the Tribe filed a tribal court complaint against BBC and two of its owners, Wayne Boyd and Charles Colombe. (Doc. 5-1). The complaint sought to pierce BBC's corporate veil and to hold Boyd and Colombe personally liable for the earlier judgment against BBC. (Doc. 5-1). On March 24, 2009, Colombe responded with a motion to dismiss arguing, among other things, that the underlying judgment against BBC was void because the tribal court violated IGRA and illegally amended an NIGC approved management contract. (Doc. 5-6). Tribal Judge Sherman Marshall denied Colombe's motion to dismiss (Doc. 5-25) and later ordered Colombe to respond to written discovery by January 22, 2011. (Doc. 5-46). Colombe then filed the present complaint in federal district court.

Colombe now asks this Court to vacate the October 16, 2007 judgment against BBC on the grounds that the tribal court had no jurisdiction to find that there had been an illegal modification of the Contract and that the IGRA created no private right of action for the Tribe to bring against BBC. Colombe also seeks a judgment on the merits finding that BBC did not violate the Contract. Finally, Colombe seeks an injunction against Defendants from continuing any litigation against Colombe that relates to the October 16, 2007 judgment. Defendants have filed a Motion to Dismiss, arguing that this Court does not have subject matter jurisdiction over the case, that Defendants have not waived their sovereign immunity, and that Colombe has failed to exhaust his tribal court remedies.

## III. DISCUSSION

### A. Colombe's Right to Pursue Claims in the Name of BBC

As a preliminary matter, this Court must determine whether Colombe has standing to assert claims in the name of BBC, a dissolved Minnesota corporation. Minnesota Statute

§ 302A.783 provides that "[a]fter a corporation has been dissolved, any of its former officers, directors, or shareholders may assert or defend, in the name of the corporation, any claim by or against the corporation." Minn. Stat. § 302A.783; see also Firstcom, Inc. v. QWest Corp., No. Civ. 04-995 ADM/AJB, 2004 WL 1402564, at *2 (D. Minn. June 21, 2004) ("The text of [section 302A.783] is clear and unambiguous: former shareholders may assert *any* claim in the name of the corporation."). Because BBC was dissolved and Colombe was a shareholder, director, and officer of BBC, he has standing to maintain the present action.

## B. Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." Myers v. Richland Cnty., 429 F.3d 740, 745 (8th Cir. 2005) (citation omitted). Here, no diversity of citizenship exists under 28 U.S.C. § 1332 because Indian tribes are neither foreign states nor citizens of any state. See Gaming World Int'l v. White Earth Band of Chippewa Indians, 317 F.3d 840, 847 (8th Cir. 2003). Federal subject matter jurisdiction under 28 U.S.C. § 1331 requires the presence of a federal question. 28 U.S.C. § 1331; Oglala Sioux Tribe v. C & W Enter., Inc., 487 F.3d 1129, 1130 (8th Cir. 2007) (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 513 (2006)). Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Courts generally consider a claim to have arisen under federal law "if a federal cause of action appears on the face [of] a well-pleaded complaint." Oglala Sioux Tribe, 487 F.3d at 1131 (citing Oklahoma Tax Comm'n v. Graham, 489 U.S. 838, 840-841 (1989)).

Colombe, relying principally on Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians, 471 U.S. 845 (1985), contends that the Court has jurisdiction under § 1331 because he is asserting that federal law has divested the Tribe of jurisdiction to determine whether the Contract was illegally modified. In Nat'l Farmers Union, a member of an Indian tribe obtained

6

a default judgment against a non-Indian school district in tribal court. Id. at 847-48. The school district and its insurer then filed an action in federal district court seeking to enjoin the tribal member from executing on the default judgment. Id. at 848. The school district and its insurer contended that "the right which they assert—a right to be protected against an unlawful exercise of Tribal Court judicial power—has its source in federal law because federal law defines the outer boundaries of an Indian tribe's power over non-Indians." Id. at 851.

The United States Supreme Court in Nat'l Farmers Union found that the district court was correct in concluding that a federal court "may determine under § 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction." Id. at 853. The Court explained:

> Because petitioners contend that federal law has divested the Tribe of this aspect of [civil jurisdiction], it is federal law on which they rely as a basis for the asserted right of freedom from Tribal Court interference. They have, therefore, filed an action 'arising under' federal law within the meaning of § 1331.

Id. at 852-53.

The United States Court of Appeals for the Eighth Circuit has applied the principles of Nat'l Farmers Union in a number of cases, two of which are particularly pertinent to the present action. See Gaming World Int'l, 317 F.3d 840; Bruce H. Lien Co. v. Three Affiliated Tribes, 93 F.3d 1412 (8th Cir. 1996). The Bruce H. Lien case involved a casino management contract between a company and an Indian tribe. 93 F.3d at 1414. After a disagreement over the management contract arose, the company filed a demand for arbitration. Id. at 1415. The Tribe responded by filing an action in tribal court seeking a declaration that the management contract was void under tribal law and seeking to enjoin the arbitration proceedings until the tribal court had an opportunity to rule on the Tribe's complaint. Id. at 1415-16. Following a failed attempt to have the tribal court action dismissed for lack of jurisdiction, the company filed suit in federal

7

district court requesting a preliminary injunction to enforce the arbitration proceedings. Id. at 1416. The Tribe moved to dismiss the federal action for lack of subject matter jurisdiction, claiming that the Tribe had not waived its sovereign immunity and that the company had failed to exhaust tribal remedies. Id. On appeal, the Eighth Circuit found that the district court had properly exercised federal question jurisdiction over the matter. Id. at 1421. The Court stated:

> While the issue of the contract's validity does not raise a federal question per se, certainly there are aspects of the dispute which do. Particularly where the entire association between the parties (and their various disputes) arise under IGRA, and where the management agreement at issue, once approved, remains so until disapproved by the NIGC. Further, this case is being directed to the Tribal Court and exhaustion within that system. The existence of tribal jurisdiction itself presents a federal question within the scope of 28 U.S.C. § 1331.

Id. (citing Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 15 (1987); Nat'l Farmers Union, 471 U.S. at 852-53). The Eighth Circuit encountered similar issues in Gaming World. In Gaming World, a Delaware corporation entered into a casino management contract with an Indian tribe. 317 F.3d at 842. Sometime thereafter, the Tribe terminated the contract and filed an action in tribal court seeking a declaration that the contract was void for failure to obtain proper federal approval. Id. at 845-846. The corporation filed a response challenging the tribal court's jurisdiction and denying the Tribe's allegations. Id. at 846. One month later, the corporation commenced litigation in federal district court seeking a declaratory judgment of the contract's validity and an order compelling arbitration. Id. The Tribe appeared in federal district court, disputed the validity of the contract, and asserted that the district court lacked subject matter jurisdiction. Id. After the district court found that it had jurisdiction under § 1331 and ordered the parties to arbitrate, the Tribe appealed. Id. The Eighth Circuit in Gaming World determined that the corporation's action arose under federal law because it raised issues concerning the

scope of tribal jurisdiction. Id. at 848. The Court compared the jurisdictional facts in Gaming World to those in Bruce H. Lien, and noted that both cases involved federal court challenges to a tribal court's jurisdiction. Id. "[A]n action filed in order to avoid tribal jurisdiction," the Court explained, "necessarily asserts federal law." Id. (citing Nat'l Farmers Union, 471 U.S. at 853).[4]

Nat'l Farmers Union and its Eighth Circuit progeny make clear that the interpretation of federal law plays a critical role in the resolution of cases that involve the question of whether a tribal court has overstepped the boundaries of its jurisdiction. Here, the gravamen of Colombe's complaint is that certain provisions of IGRA and NIGC regulations have divested the Tribe of jurisdiction to determine whether there was an illegal modification of the management contract. Colombe thus has filed an action "arising under" federal law within the meaning of § 1331. See Nat'l Farmers Union, 471 U.S. at 853; Gaming World, 317 F.3d at 848 ("It is well established that the scope of tribal court jurisdiction is a matter of federal law."); TTEA v. Ysleta Del Sur Pueblo, 181 F.3d 676, 683 (5th Cir. 1999) (court had jurisdiction to determine whether tribal court properly exercised jurisdiction over 25 U.S.C. § 81 claim); Kerr-McGee

---

[4] The Court in Gaming World also identified a second basis for federal question jurisdiction. The Court explained that, in terms of federal question jurisdiction, "there is a significant distinction between ordinary contract disputes involving Indian tribes, and those raising issues in an area of extensive federal regulation." Id. at 847 (citations omitted). By way of illustration, the Court observed that in Comstock Oil & Gas, Inc. v. Ala. & Coushatta Indian Tribes, 261 F.3d 567 (5th Cir. 2001), the Fifth Circuit found that the "'extensive regulatory scheme' governing tribal oil and gas leases conferred federal jurisdiction over a contract dispute between a tribe and two oil companies." Gaming World, 317 F.3d at 848 (citing Comstock, 261 F.3d at 574-75). The Court determined that "the regulatory scope of IGRA is similarly far reaching in its supervisory power over Indian gaming contracts." Id. Because the complaint in Gaming World raised issues under the "extensive regulatory framework of IGRA," it was more than a routine contract action and was sufficient to invoke federal question jurisdiction. Id.; see also Tamiami Partners v. Miccosukee Tribe of Indians, 63 F.3d 1030, 1047 (11th Cir. 1995) (concluding that IGRA and NIGC regulations are incorporated into casino management contracts by law); William C. Canby, American Indian Law in a Nutshell 371 (5th ed. 2009) ("Claims based on management contracts have generally been held to arise under federal law for purposes of federal jurisdiction.").

Corp. v. Farley, 115 F.3d 1498, 1501 (10th Cir. 1997) ("The scope of a tribal court's jurisdiction is a federal question over which federal district courts have jurisdiction."); Bruce H. Lien, 93 F.3d at 1421-22; Oglala Sioux Tribe v. C & W Enters., 516 F.Supp.2d 1039, 1042 (D.S.D. 2007) ("Both National Farmers Union and Bruce Lien recognize that because tribal sovereignty is limited only by federal law, any challenges to the tribal court's jurisdiction necessarily arises under federal law."); Canby, supra at 244 (5th ed. 2009) (explaining that as a consequence of National Farmers Union, "anyone asserting an absence of tribal power under federal statute, treaty, or the 'common law' of federal Indian law has an entree into federal court.").

## C. Sovereign Immunity

A motion to dismiss on sovereign immunity grounds may be analyzed under Rule 12(b)(1). Hagen v. Sisseton-Wahpeton Cmty. Coll., 205 F.3d 1040, 1043 (8th Cir. 2000). However, the question of whether the Tribe's sovereign immunity bars Colombe from bringing this suit is a jurisdictional issue separate from subject matter jurisdiction. See In re Prairie Island Dakota Sioux, 21 F.3d 302, 305 (8th Cir. 1994) ("We find, therefore, that sovereign immunity is a jurisdictional consideration separate from subject matter jurisdiction . . ."); Calvello v. Yankton Sioux Tribe, 899 F. Supp. 431, 435 (D.S.D. 1995) (determining first that the court had subject matter jurisdiction and then noting that "[t]he Court must next consider, however, the separate jurisdictional issue of whether [the plaintiff's] suit against the Tribe is barred by the doctrine of sovereign immunity.").

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." Amerind Risk Mgmt. Corp. v. Malaterre, 633 F.3d 680, 685 (8th Cir. Feb. 25, 2011) (quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978)). "Thus, as a matter of federal law, an Indian tribe is subject to suit only where Congress

has authorized the suit or the tribe has waived its immunity." Id. (quoting Kiowa Tribe of Okla. V. Mfg. Techs., Inc., 523 U.S. 751, 754 (1998)). "A waiver of sovereign immunity may not be implied, but must be unequivocally expressed by either the Tribe or Congress." Id. (quoting Rupp v. Omaha Indian Tribe, 45 F.3d 1241, 1244 (8th Cir. 1995)).

While a tribe may waive its sovereign immunity by contract, it must do so with the "requisite clarity." See C & L Enters., Inc. v. Citizen Band of Potawatomi Indian Tribe, 532 U.S. 411, 418 (2001) ("[T]o relinquish its immunity, a tribe's waiver must be clear.") (citations omitted). This does not mean, however, that the contract must contain "'magic words' stating that the tribe hereby waives its sovereign immunity." Rosebud Sioux Tribe v. Val-U Constr. Co. of S.D., 50 F.3d 560, 563 (8th Cir. 1995); Sokaogon Gaming Enter. v. Tushie-Montgomery Ass'n, 86 F.3d 656, 660 (7th Cir. 1996) (explaining that a tribe may waive its sovereign immunity in a contract without actually using the words "sovereign immunity."); Canby, supra at 110 ("Although the intention to waive must be clear, the waiver need not include the precise term "sovereign immunity.").

In C & L Enterprises, the Supreme Court found that a tribe waived its sovereign immunity by entering into a standard form construction contract that contained a provision requiring arbitration of all claims "arising out of or relating to the Contract" and provided that any arbitration awards could be reduced to judgment in "accordance with applicable law in any court having jurisdiction thereof." C & L Enterprises, 532 U.S. at 418-419. The Eighth Circuit reached a similar result in Val-U Construction. See Val-U Constr., 50 F.3d at 562 (finding that the following language in a contract was a clear expression of waiver of a tribes sovereign immunity: "All questions of dispute under this Agreement shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration

Association.").

Article 21 of the Contract at issue provides in pertinent part:

> Should litigation be necessary to enforce the obligations of this agreement, the parties agree that such litigation shall not be brought in the courts of any state. Instead, access to the courts, shall be as follows:
> (a) Any litigation relating to a dispute over the terms, rights or obligations set forth in this agreement shall first be initiated in Rosebud Sioux Tribal Court.
> (b) The parties agree that in the event of a dispute requiring court intervention, either party may apply to the Tribal Court for appointment of a special judge to preside over any such disputes. The Tribal Court shall immediately appoint such special judge to preside over disputes involving this contract or the management of the project. The special judge must be approved by both parties to this agreement prior to presiding over the case or controversy. The special judge must be law trained, and the parties hereto will share equally in any compensation to be paid to the special judge incurred in the course of his duties on the case.
> (c) Should either party request the appointment of a special judge to hear a dispute or settle a controversy, said judge must be agreed upon by both parties and selected and appointed within seven days of the application by either party. The parties may waive or extend the time limit included herein by mutual agreement.
> (d) With the use of the special judge as provided herein, the Rosebud Sioux Tribal Court shall have initial jurisdiction over all disputes arising with respect to this contract, subject only to those exceptions as set forth in subparts (f) and (g) hereto.
> (e) Regular appeals from the decisions of the special judge for the Rosebud Sioux Tribal Court shall be taken as provided in the Rosebud Sioux Tribal Rules of Appellate Procedure.
> (f) The jurisdiction of the Rosebud Sioux Tribal Court system with respect to disputes related to this contract, shall extend through the Tribal Trial Court and Appellate Court level. <u>Tribal Court remedies must be exhausted before any party may initiate suit in Federal Court (except as set forth herein and in Section (g) below). Once Tribal Court remedies have been exhausted, the jurisdiction of the Tribal Court shall cease, permitting any party to bring suit before the United States Federal District Court, and Tribal Court jurisdiction will terminate for purposes of allowing the Federal Court to entertain a de novo review of the case on its</u>

> merits. The parties hereto expressly intend that the Federal Court shall not be limited to a review of Tribal Court jurisdiction, but shall hear the case on its underlying merits on a de novo basis. The Federal Court may enter such relief on the merits of the controversy as it deems just and equitable, or as properly requested by either party. Upon adoption and execution of this contract, the provisions of this section shall be considered as an amendment to the tribal judicial code, applying solely to disputes arising under this contract and establishing the jurisdiction of the Rosebud Sioux Tribal Court as set forth herein with respect to disputes under this contract.

(Doc. 9-1 at 63-65) (emphasis added). The plain language of the Contract contains a waiver of sovereign immunity upon exhaustion of tribal court remedies. Section (f) of Article 21 makes clear that either party to the Contract may bring suit in federal district court to obtain a de novo review of the dispute on its merits, following exhaustion of tribal court remedies. By agreeing to be subject to suit in federal district court, a tribe agrees to waive its sovereign immunity. See Sokaogon Gaming Enter., 86 F.3d at 659 ("To agree to be sued is to waive any immunity one might have from being sued."); Val-U Constr., 50 F.3d at 562 (explaining that by agreeing to the arbitration clause and its provisions for dispute resolution, the tribe clearly intended to waive its sovereign immunity, as "[b]y definition such disputes could not be resolved by arbitration if one party intended to assert sovereign immunity as a defense.") (citation omitted).

Defendants argue, however, that the waiver of sovereign immunity contained in Article 21 of the Contract is void for failure to comply with section 4-2-1 of the Rosebud Sioux Tribe's Law and Order Code. Section 4-2-1 states:

> SOVEREIGN IMMUNITY- Except as required by federal law or the Constitution and bylaws of the Tribe or specifically waived by a resolution or ordinance of the Tribal Council making specific reference to such, the Rosebud Sioux Tribe and its officers and employees shall be immune from suit in any civil action for any liability arising from the performance of their official duties.

13

(Doc. 13-1). This unequivocal language makes clear that a waiver of sovereign immunity must comport with the requirements of section 4-2-1 to be valid.

In its previous Opinion and Order Regarding Motion to Dismiss (Doc. 21), this Court expressed concern over Colombe's failure to point to any evidence that the Tribal Council had enacted a resolution or adopted an ordinance that waived the Tribe's sovereign immunity with respect to the Contract. (Doc. 21 at 14). This Court noted, however, that "Exhibit H"—which was discussed in Article 24.15 of the Contract but not included in any of Colombe's filings—appeared to be a Tribal resolution establishing that the Tribe waived its sovereign immunity. Because "Exhibit H" was pivotal to determining whether their was a waiver of sovereign immunity, this Court gave Colombe fourteen days to produce it.

Colombe now has filed Tribal Resolution 93-02, which states in pertinent part:

> THEREFORE BE IT RESOLVED, that the Rosebud Sioux Tribal Council in conformity with Tribal Ordinance 87-03 and the Indian Gaming Regulatory Act Title 25 USC, PL 100-497, for exclusive purpose of passing the management contract with BBC, Inc. allows a limited waiver of Sovereign Immunity pursuant to its Corporate Charter . . .

(Doc. 27-1). This language makes clear that the Tribe did, in fact, adopt a resolution waiving its sovereign immunity with respect to the Contract. Accordingly, the waiver of sovereign immunity contained in Article 21(f) of the Contract is valid and does not violate section 4-2-1 of the Rosebud Sioux Tribe's Law and Order Code.[5]

The *limited* waiver of sovereign immunity contained in Article 21 does not necessarily grant the Court authority to exercise jurisdiction over the entirety of Colombe's complaint, however. When a tribe waives its sovereign immunity, it "may prescribe the terms and

---

[5] Colombe also filed Tribal Resolution 93-03, whereby the Tribal Council adopted the Contract and authorized the Tribal President and Secretary to sign it. (Doc. 27-2).

14

conditions on which it consents to be sued, and the manner in which the suit shall be conducted." Mo. River Serv., Inc. v. Omaha Tribe of Neb., 267 F.3d 848, 854 (8th Cir. 2001) (citation omitted); Oglala Sioux Tribe v. C & W Enter., 542 F.3d 224, 231 (8th Cir. 2008) ("A sovereign tribe has full authority to limit any waiver of immunity to which it consents."). Here, the Tribe limited its waiver of immunity by requiring that BBC exhaust its remedies in the Rosebud Sioux Tribal Court before initiating an action in federal court. (Doc. 9-1 at 63-65). Even if this requirement had not been part of the Contract, BBC, and thus in turn Colombe in this case, still would be required to exhaust his tribal court remedies.

As part of its steadfast effort to foster tribal self-government, Congress has "consistently encouraged" the development of tribal courts. Iowa Mutual Ins. Co., 480 U.S. at 14-15; National Farmers, 471 U.S. at 856. In deference to this commitment, both the Supreme Court and the Eighth Circuit have required exhaustion of tribal court remedies in matters related to reservation affairs. Iowa Mutual Ins. Co., 480 U.S. at 16 ("[T]he federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a full opportunity to determine its own jurisdiction.") (citations and internal marks omitted); Bruce Lien, 93 F.3d at 1420 ("Supreme Court precedent and this court's pronouncements based thereon require exhaustion of tribal court remedies in matters related to reservation affairs.") (citation omitted). By requiring parties to exhaust their tribal court remedies before seeking relief in federal court, the tribal exhaustion rule allows tribal courts to assert authority over reservation affairs without having to "compete" against federal courts for the right to do so.[6] See Iowa

---

[6] The tribal exhaustion rule is not absolute, however. The Supreme Court has made clear that exhaustion is unnecessary where:
> (1) an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; (2) the action is patently violative of express jurisdictional prohibitions; or (3) exhaustion would be futile because of the lack of an adequate opportunity to

15

Mutual Insurance Co., 480 U.S. at 16 ("[U]nconditional access to the federal forum would place [federal courts] in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs."); Duncan Energy Co. v. Three Affiliated Tribes, 27 F.3d 1294, 1299 (8th Cir. 1994) ("Because a federal court's exercise of jurisdiction over matters relating to reservation affairs can impair the authority of tribal courts . . . the examination of tribal sovereignty and jurisdiction should be conducted in the first instance by the tribal court itself.") (citing National Farmers, 471 U.S. at 856). The exhaustion of tribal court remedies is a comity-based rule arising out of a mutual respect between two sovereigns rather than a jurisdictional prerequisite. See Iowa Mutual Ins. Co., 480 U.S. at 16 n.8 ("Exhaustion is required as a matter of comity, not as a jurisdictional prerequisite."); see also Smith v. Moffett, 947 F.2d 442, 445 (10th Cir. 1991). In addition to promoting tribal self-government and self-determination, the tribal exhaustion rule encourages the "orderly administration of justice" and provides federal courts with the unique expertise of tribal courts in matters relating to tribal court jurisdiction. National Farmers, 471 U.S. at 856. Because the instant case concerns the Tribe and the operation of a tribally owned casino located within the exterior boundaries of the Rosebud Sioux Reservation, exhaustion of tribal court remedies is "especially appropriate." Bruce Lien, 93 F.3d at 1420.

Colombe rightly does not dispute that BBC had to exhaust its tribal court remedies. Instead, he argues that BBC has fulfilled this requirement. A careful review of the tribal court proceedings reveals that BBC has exhausted its tribal court remedies only as to the limited issue of the tribal court's jurisdiction to find an illegal modification of the contract. When the Tribe appealed Judge Jones's first decision to the Rosebud Supreme Court, BBC argued that IGRA did

---

challenge the court's jurisdiction.
Bruce Lien, 93 F.3d at 1420 n.14 (citing National Farmers, 471 U.S. at n.21).

not create a private cause of action and, reading the brief generously to BBC, that jurisdiction to determine the legality of the Contract modification rests with the NIGC rather than tribal courts. (Doc. 9-3 at 11-18). BBC raised its jurisdictional argument more clearly in its Optional Brief on Rehearing.[7] (Doc. 9-5). The Rosebud Supreme Court had the opportunity to determine whether it had jurisdiction to determine whether the Contract had been illegally modified, thereby giving the Court "the first opportunity to evaluate the factual and legal bases for the challenge" to its jurisdiction. National Farmers, 471 U.S. at 856. Although the Rosebud Supreme Court never specifically addressed BBC's jurisdictional claims, the Court nevertheless made an implicit ruling on the issue when it exercised its jurisdiction to find that the Contract had been modified and that the modification was void for failure to obtain NIGC approval. (Doc. 9-4 at 7).

The Rosebud Supreme Court did not have an opportunity to rule on any issues relating to Judge Jones's second decision, however. Complete exhaustion of tribal court remedies requires review by tribal appellate courts. See Iowa Mutual Ins. Co., 480 U.S. at 16-17 ("The federal policy of promoting tribal self-government encompasses the development of the entire tribal court system, including tribal appellate courts. At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of lower tribal courts."). The terms of the management contract required the parties to seek review at the tribal appellate court level before commencing litigation in federal court. Here, BBC never appealed Judge Jones's October 16, 2007 decision granting the Tribe

---

[7] The Rosebud Supreme Court's failure to discuss BBC's jurisdictional arguments in the Court's en banc opinion might stem from the fact that the Tribe's motion for a rehearing was limited to the "sole issue of the appropriate *remedy* for BBC Entertainment Inc.'s . . . breach of the management contract in regard to the funding of the Operating Expense Reserve (OER) account." (Doc. 9-6) (emphasis added).

a judgment against BBC. (Doc. 9-7).

Colombe contends that BBC should be excused for its failure to appeal Judge Jones's second decision because BBC lacked the funds necessary to comply with Rule 2 of the Rosebud Sioux Tribal Court Rules of Appellate Procedure. Rule 2 of the Rosebud Sioux Tribal Court Rules of Appellate Procedure provides in pertinent part:

> Upon the filing of the Notice of Appeal, the Appellant shall also be required to post an appellate bond. In civil matters, bond shall be set at $50.00, plus the Appellant shall be required to file a statement of financial responsibility equal to the amount of the Judgment in Tribal Court. If the Appellant is unable to file the required financial statement, they shall be required to post cash or other sureties equal to the amount of the Tribal Court judgment.

(Doc. 13-3). The terms of the management contract undermine Colombe's argument. Article 21(e) of the management contract states that "[r]egular appeals from the decision of the special judge for the Rosebud Sioux Tribal Court shall be taken as provided in the Rosebud Sioux Tribal Rules of Appellate Procedure." (Doc. 9-1 at 64). Colombe agreed to be bound by the Rosebud Sioux Tribal Court Rules of Appellate Procedure. To allow Colombe to come to federal court and assert claims relating to Judge Jones's second decision would frustrate the federal policy of encouraging tribal self-government, would encroach upon the Tribe's sovereignty, and would disregard the terms of the contract. Both comity principles and the terms of the management contract dictate that Colombe's claims concerning the October 16, 2007 judgment be dismissed.[8]

Therefore, it is

ORDERED that Defendants' Motion to Dismiss (Doc. 5) is granted in part to the extent

---

[8] This Court does not resolve the question of whether Defendants Rosebud Sioux Tribal Court and Judge Sherman Marshall should be dismissed. This Court leaves it to the parties determination and suggestion how best to present any remaining issues and whether a ruling on the dismissal of the tribal court and Judge Sherman Marshall will be required.

that Colombe's claims concerning the October 16, 2007 judgment are dismissed. It is further

ORDERED that Defendants' Motion to Dismiss (Doc. 5) is otherwise denied.

Dated September 23, 2011.

                            BY THE COURT:

                            ROBERTO A. LANGE
                            UNITED STATES DISTRICT JUDGE