

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| CHARLES COLOMBE, Individually and as an Officer of BBC Entertainment, Inc., a dissolved Minnesota corporation, | * * * * | CIV 11-3002-RAL |
| Plaintiff, | * * | OPINION AND ORDER DENYING PLAINTIFF'S |
| vs. | * * | MOTION FOR SUMMARY JUDGMENT AND GRANTING |
| ROSEBUD SIOUX TRIBE, ROSEBUD SIOUX TRIBAL COURT, and JUDGE SHERMAN MARSHALL, in his Official and Individual Capacities, | * * * * * | DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| Defendants. | * | |

## I. INTRODUCTION

Plaintiff Charles Colombe, a shareholder, director, and officer of BBC Entertainment, Inc. ("BBC") filed a Complaint against Defendants Rosebud Sioux Tribe ("the Tribe"), Rosebud Sioux Tribal Court, and Judge Sherman Marshall (collectively "Defendants"). Doc. 1. Both parties have filed motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Doc. 48; Doc. 58. Colombe's motion for summary judgment seeks a ruling that the Supreme Court of the Rosebud Sioux Tribe lacked jurisdiction to determine that the oral modification of a casino management contract was invalid. Doc. 48. Colombe contends that summary judgment is proper because the Tribe sued in Rosebud Sioux Tribal Court based on the Indian Gaming Regulatory Act ("IGRA") and IGRA does not create a private cause of action. Doc. 48. Colombe requests this Court vacate the Tribal Court judgment for lack of jurisdiction and prevent action to satisfy the Tribal Court judgment. Doc. 48. Defendants oppose Colombe's motion for summary judgment, Doc. 57, and have filed their own motion for

1

summary judgment on Colombe's Complaint. Doc. 58. Defendants argue that the Tribal Court had jurisdiction to determine whether an oral modification to a management contract required approval by the National Indian Gaming Commission ("NIGC") and to declare an unapproved modification contract void. Doc. 58.

On August 17, 2011, this Court issued an Opinion and Order Regarding Motion to Dismiss resolving part of the issues and requiring submission of a tribal resolution missing from the record that affected this Court's analysis of waiver of tribal sovereign immunity. Doc. 21. On September 23, 2011, this Court issued an Opinion and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Doc. 33.[1] This Court now denies Colombe's Motion for Summary Judgment and grants Defendants' Motion for Summary Judgment.

## II. FACTS

The Rosebud Sioux Tribe ("the Tribe") is a federally recognized Indian tribe that owns and operates a casino on tribal trust land within the exterior boundaries of the Rosebud Sioux Reservation. Doc. 1 at 3; Doc. 11 at 2. BBC is a now-dissolved Minnesota corporation that was owned in part by tribal member Charles Colombe. Doc. 1 at 2. In June of 1994, the Tribe and BBC entered into a five-year casino management contract[2] ("the Contract") pursuant to the

---

[1] For the sake of completeness and to aid understanding of the Court's ruling, this Opinion and Order repeats in part the contents of the August 17, 2011 Opinion and Order and of the September 23, 2011 Opinion and Order.

[2] A "management contract" is "any contract, subcontract, or collateral agreement between an Indian tribe and a contractor or between a contractor and a subcontractor if such contract or agreement provides for the management of all or part of a gaming operation." 25 C.F.R. § 502.15. A management contract cannot be approved unless it "provides certain minimal protections for the tribe" that are set out either in the IGRA or in the accompanying implementing regulations. Turn Key Gaming, Inc. v. Oglala Sioux Tribe, 164 F.3d 1092, 1094 (8th Cir. 1999). For example, management contracts must comply with IGRA provisions setting forth the maximum term for

2

Indian Gaming Regulatory Act of 1988, 25 U.S.C. §§ 2701, et seq. Article 6.4(c)(5) of the Contract required that BBC fund an initial Operation Expense Reserve ("OER") account. Doc. 9-1 at 37-38; Doc. 9-7 at 20. Although BBC never made an initial contribution to the OER account, the Tribe and BBC reached a subsequent oral agreement to contribute 7.5% of the casino's net profits to the account each month. Doc. 9-4 at 4; Doc. 9-7 at 24-25. At conclusion of the Contract, BBC withdrew $415,857.00 from the OER account based on BBC's belief that it was entitled to 35% of the OER account balance, consistent with the Contract's division of net profits with 65% going to the Tribe and 35% to BBC. Doc. 9-4 at 4.

The Tribe disputed BBC's withdrawal of the $415,857.00 and brought suit against BBC in Tribal Court. Before Special Tribal Court Judge B.J. Jones, the Tribe argued that the oral modification concerning how to fund the OER account did not comport with IGRA and its implementing regulations. Doc. 9-4 at 4-5. IGRA established a statutory basis for the regulation and operation of gaming by Indian tribes and created the NIGC to oversee Indian gaming. 25 U.S.C. § 2702. Subject to the approval of the Chairman of the NIGC, Indian tribes may enter into management contracts for the operation and management of a tribe's gaming facilities. 25 U.S.C. § 2711. Once the NIGC Chairman has approved a casino management contract, any attempt by the parties to modify the contract is void without further Chairman approval. 25 C.F.R. § 535.1. The NIGC Chairman approved the Contract in June of 1994, but no one sought approval of the later oral modification concerning funding the OER account. Doc. 9-1 at 6. The Tribe thus contended that the modification was void and that because BBC did not make an initial contribution to the OER account, BBC was not entitled to any of the money in the

---

management agreements, division of profits, and certain limitations on repayment of construction costs incurred by contractor. Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians, 317 F.3d 840, 842 (8th Cir. 2003).

3

account. Judge Jones disagreed with the Tribe, instead finding that "nothing in the agreement prohibited the parties from using their respective net earnings to fund an account such as the OER account . . . ." Doc. 9-2 at 11.

The Tribe appealed Judge Jones's decision to the Supreme Court of the Rosebud Sioux Tribe. Doc. 9-4. In its appellate brief, BBC argued that IGRA does not create a private right of action and suggested that jurisdiction to determine the legality of the Contract modification rested with the NIGC rather than the Tribal Court.[3] Doc. 9-3. The Rosebud Sioux Tribal Supreme Court found that the oral agreement to fund the OER account through mutual monthly contributions was void for failure to obtain the approval of the NIGC and remanded the case to Judge Jones for an accounting. Doc. 9-4. The Court did not directly address BBC's jurisdictional argument. Doc. 9-4.

The Tribe subsequently sought a rehearing en banc, contending that the Rosebud Sioux Tribal Supreme Court's order remanding the case to Judge Jones contained certain mistakes of law and fact. Doc. 9-6. The Rosebud Sioux Tribal Supreme Court granted the motion for a rehearing en banc, but limited the rehearing "to the sole issue of the appropriate remedy for BBC

---

[3] The jurisdictional argument in BBC's first appellate brief was as follows:

> If the Tribe had a claim that BBC violated IGRA because of a subsequent agreement which consisted of an agreement that both parties would delay full payment of their share of net revenues, the Tribe had a potential remedy, if they had been truly aggrieved. That remedy was to complain to the NIGC and to seek relief from that agency. That was not done, and the reason it was not done might appear obvious to even the casual observer. 25 USC § 2713(3) provides the procedure applicable to violations which replaces the jurisdiction of courts.

Doc. 9-3 at 15. BBC's brief then discussed § 2713 and stated that "[i]t is clear from § 2713 that it is the agency that has authority to act on issues relating to the 'modification or termination of any management contract.'" Doc. 9-3 at 16 (quoting § 2713(3)).

4

Entertainment, Inc.'s . . . breach of the management contract in regard to the funding of the [OER] account." Doc. 9-6 at 2. In its brief on rehearing, BBC asserted that the Rosebud Sioux Tribal Supreme Court had failed to discuss BBC's jurisdictional argument in its initial remand order and argued that only the NIGC had jurisdiction to determine whether there had been an illegal modification of the Contract. Doc. 9-5. Following the rehearing en banc, the Rosebud Sioux Tribal Supreme Court issued a Summary Order that affirmed the Court's earlier remand to Judge Jones without discussing BBC's jurisdictional argument. Doc. 9-6.

On October 16, 2007, Judge Jones granted the Tribe a judgment against BBC in the amount of $399,353.61, plus interest accrued from August 15, 1999, in the amount of $127,793.15. Doc. 9-7. BBC filed a motion for a new trial, Doc. 9-9, which was denied for failure to adhere to the Rosebud Sioux Tribe Rules of Civil Procedure. Doc. 9-10. BBC did not appeal the judgment.

On February 17, 2009, the Tribe filed a Tribal Court complaint against BBC and two of its owners, Wayne Boyd and Charles Colombe. Doc. 5-1. The complaint sought to pierce BBC's corporate veil and to hold Boyd and Colombe personally liable for the earlier judgment against BBC. Doc. 5-1. On March 24, 2009, Colombe responded with a motion to dismiss arguing, among other things, that the underlying judgment against BBC was void because the Tribal Court violated IGRA and illegally amended an NIGC-approved management contract. Doc. 5-6. Tribal Judge Sherman Marshall denied Colombe's motion to dismiss, Doc. 5-25, and later ordered Colombe to respond to written discovery by January 22, 2011. Doc. 5-46.

On January 12, 2011, Colombe filed a two-count Complaint before this Court against the Rosebud Sioux Tribe, Rosebud Sioux Tribal Court, and Judge Sherman Marshall. Doc. 1. Count I of the Complaint sought a de novo review of whether BBC and Colombe violated the

Management Agreement. Doc. 1 at 13. Colombe asked this Court to vacate the October 16, 2007 judgment and damage award. Doc. 1 at 14. Count II sought an injunction prohibiting the Rosebud Sioux Tribe from continuing litigation to recover on the October 16, 2007 judgment in Tribal Court. Doc. 1 at 14.

In an Opinion and Order dated September 23, 2012, this Court held that Colombe had not exhausted his Tribal Court remedies as to issues relating to Judge Jones's October 16, 2007 decision. Doc. 33 at 17. Colombe and BBC "never appealed the October 16, 2007 decision granting the Tribe a judgment against BBC." Doc. 33 at 17-18. This Court dismissed all of Colombe's claims concerning the October 16, 2007 decision. Doc. 33 at 18. This Court did find exhaustion as to the "the limited issue of the [T]ribal [C]ourt's jurisdiction to find an illegal modification of the contract." Doc. 33 at 16.

Colombe now asks this Court to rule on the sole remaining issue from this Court's September 23, 2012 Opinion and Order: Whether the Tribal Court had jurisdiction to hold that the oral modification to the NIGC-approved management contract was void. Colombe argues that the NIGC has the sole, exclusive authority to determine whether modifications to NIGC-approved management contracts can have any legal effect. Doc. 49 at 6-7. Colombe also argues that Defendants' Tribal Court suit is prohibited because IGRA does not authorize a private cause of action. Doc. 49 at 8. Defendants counter that the Rosebud Sioux Tribal Supreme Court had jurisdiction to rule on the legal validity of the oral, unapproved modification to the approved management contract after Colombe raised the modification as a defense in the Tribe's underlying contract suit. Doc. 59; Doc. 60. Defendants also assert that its Tribal Court suit is not for a "claimed IGRA violation" and therefore does not need to be authorized by the IGRA. Doc. 57 at 19.

## III. DISCUSSION

### A. Tribal Court Jurisdiction Over the Unapproved Modification

The Indian Gaming Regulatory Act ("IGRA") provides the statutory basis for operating and regulating Indian gaming. Turn Key Gaming, Inc. v. Oglala Sioux Tribe, 164 F.3d 1092, 1094 (8th Cir. 1999). IGRA serves to promote "'tribal economic development, self-sufficiency, and strong tribal governments'" and shield tribes from the influence of organized crime to ensure that the tribes are the primary beneficiaries of tribal gaming. First Am. Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1167 (10th Cir. 2005) (quoting 25 U.S.C. § 2702); see also Wells Fargo Bank, Nat. Ass'n v. Lake of the Torches Econ. Dev. Corp., 658 F.3d 684, 700 (7th Cir. 2011) ("One of IGRA's principal purposes is to ensure that the tribes retain control of gaming facilities set up under the protection of IGRA and of the revenue from these facilities."). "IGRA created the National Indian Gaming Commission (NIGC), 25 U.S.C. § 2704, and assigned responsibility for reviewing all management contracts to the Chairman of NIGC." Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians, 317 F.3d 840, 842 (8th Cir. 2003); see also Turn Key Gaming, 164 F.3d at 1094 (citing 25 U.S.C. § 2711) ("[T]he Act permits tribes to enter into management contracts for the operation and management of gaming facilities, subject to the approval of such contracts by the Chairman of the NIGC."). "[A]ny management contract that does not receive approval is void, and [] any attempted modification of an approved [management] contract that does . . . not receive approval, is also void." Turn Key Gaming, 164 F.3d at 1094 (citing 25 C.F.R. § 533.7, 535.1(f)); see also 25 C.F.R. § 533.7 ("Management contracts . . . that have not been approved by the Chairman in accordance with the requirements of part 531 of this chapter and this part, are void."); 25 C.F.R. § 535.1 ("Amendments that have not been approved by the Chairman .

7

. . are void."); Mo. River Servs., Inc. v. Omaha Tribe of Neb., 267 F.3d 848, 853-54 (8th Cir. 2001) (holding that an attempted modification to an approved management contract is not enforceable); United States ex. rel. Bernard v. Casino Magic Corp., 293 F.3d 419, 424-25 (8th Cir. 2002) (noting that management contracts that are not approved by the Chairman are "unenforceable" and "invalid"). Void means "[o]f no legal effect; null." Black's Law Dictionary 1709 (9th ed. 2009).

The United States Court of Appeals for the Eighth Circuit has presumed there to be jurisdiction, without first deferring to the NIGC, to determine whether a contract is of the type that requires NIGC approval to have legal effect and to refuse to give unapproved management contracts and unapproved modifications legal effect when necessary approval is lacking. See Mo. River Servs., 267 F.3d at 853-54 (assuming jurisdiction and holding that an unapproved management agreement and an unapproved modification are "void"); Turn Key Gaming, 164 F.3d at 1094-95 (assuming jurisdiction and holding that oral modification to a management contract was precluded from consideration because it was unapproved); Casino Magic, 293 F.3d at 425-26 (assuming jurisdiction to hold that certain agreements are management agreements subject to NIGC's approval process and holding that "[t]he law is clear that management agreements must be approved by the Chairman of the NIGC" and "[w]ithout that approval, invalid management fees must be recovered on behalf of the Tribe"). Other federal courts likewise have assumed jurisdiction to determine when a purported agreement is subject to the NIGC's approval requirement and to void an agreement if approval is lacking. See Wells Fargo Bank, 658 F.3d at 686 (assuming jurisdiction and holding that a bond indenture agreement had sufficient restrictions on the tribe's ability to control casino revenues that the agreement constituted a management contract and that the contract was void for failure to obtain NIGC

8

approval); Catskill Dev., L.L.C. v. Park Place Entm't Corp., 217 F.Supp. 2d 423, 433 (S.D.N.Y. 2002) (assuming jurisdiction to hold an unapproved collateral agreement was "void and of no effect"); BounceBackTechnologies.com, Inc. v. Harrah's Entm't, Inc., No. 98-2058, 2003 WL 21432579, at *1, 4 (D. Minn. June 13, 2003) (assuming jurisdiction to determine that a "Technical Assistance and Consulting Agreement" executed between two companies was not a "management contract" and did not require NIGC approval to be enforceable).

In Turn Key Gaming, a casino developer entered into a management contract with a tribe to develop and manage a casino on tribal land. 164 F.3d at 1093. The contract was submitted to the NIGC for approval. Id. at 1093. The contract "provided that it could not be changed orally, but only by an instrument in writing signed by both parties and submitted by the Tribe for written approval to the NIGC." Id. at 1094. The developer asserted that after construction had begun but before the NIGC had approved the contract, the parties agreed orally to modify the contract upon NIGC approval. Id. After NIGC approval, the tribe refused to honor the alleged oral modification, the developer ceased construction, and the developer attempted to enforce the alleged oral, unapproved modification by suing the tribe in federal court. Id. at 1095. The Eighth Circuit held that the alleged oral modification of the NIGC-approved construction contract "can have no effect with respect to any of the subject matter encompassed by the Management Agreement." Id. at 1094-95. The IGRA and its implementing regulations' requirement that any modification to a management contract requires NIGC approval to be valid "preclude consideration of any subsequent agreements not approved by the Chairman of the NIGC."[4] Id. The district court thus was correct in refusing to "consider the content and effect" of the modification because the subject matter of the modification—the maximum repayment

---

[4] The Eighth Circuit held the modification was void for an alternative reason as well. The management contract's "no-oral-modification clause" precluded consideration of the unapproved oral modification. Turn Key Gaming, 164 F.3d at 1094-95.

9

amount—was encompassed by the contract and the modification was not approved. Id. Therefore, the district court correctly ignored the modification and gave it no legal effect. See id.

The Eighth Circuit reached a similar result—concluding that an unapproved amendment to a management contract was void and unenforceable—in Missouri River Services, 267 F.3d 848. In Missouri River Services, a company and a tribe entered into an agreement in December of 1987 giving the company exclusive rights to operate gaming facilities "on the Tribe's lands." Id. at 850. The tribe had land in Nebraska and Iowa. Id. at 851-52. The BIA, which had management contract approval responsibility at the time, withheld approval of the December 1987 contract and requested specification as to the facility's proposed location and the proposed gaming offerings it would provide. Id. at 850, 852. The parties altered the December 1987 agreement and submitted a new agreement that the BIA approved in February of 1988, which stated the facility would be in "Thurston County, Nebraska" and would conduct "Bingo and Bingo-related activities." Id. at 850. The bingo facility was not successful because the parties were not permitted to open a full casino at the site. Id. at 851. The bingo facility closed in September of 1989 after the company had invested more than six million dollars. Id. After the facility's closing, the parties executed a "Second Amendment to Agreement." Id. This amendment included language establishing that the parties' original intent was that the Thurston County bingo facility would include a full casino, although their approved contract did not reflect that intent. Id. The amendment also waived the company's exclusivity clause so the tribe could conduct gaming on other lands. Id. This amendment was never approved by the NIGC or BIA. Id. The tribe subsequently contracted with another gaming company and opened a very successful casino on the tribe's lands in Iowa. Id. The company demanded arbitration, as the

approved contract provided, seeking reimbursement of construction costs for the Nebraska facility to be paid from the tribe's gaming revenue that included revenue from the successful Iowa casino. Id. An arbitrator ruled for the company, and the company sought enforcement of the award in federal court. Id. at 851-52.

The company in Missouri River Services then asked the Eighth Circuit to consider the unapproved December 1987 agreement and the unapproved "Second Amendment to Agreement" when construing the scope of the tribe's waiver of sovereign immunity. 267 F.3d at 851-52. The Eighth Circuit rejected the company's argument that it should consider any unapproved contract or unapproved amendment when the approved management contract addressed the scope of the tribe's waiver of sovereign immunity. Id. at 854. The Eighth Circuit held, as it had previously in Turn Key Gaming, that:

> [N]o matter the correct approach in ordinary contract disputes, in the context of Indian gaming the directives of Congress, when made apparent, must control. In the context of the IGRA, . . . any management contract that does not receive approval is void, and that any attempted modification of an approved contract that does not . . . receive approval, is also void.

Id. at 853 (internal citations omitted). The Eighth Circuit refused to give the unapproved December 1987 agreement and the unapproved amendment any legal effect. Id.

Colombe and the Tribe's oral modification regarding funding of the OER account was an attempted oral modification of the approved management contract. This modification was not submitted to or approved by the Chairman of the NIGC. Congress, through IGRA and its implementing regulations, has declared any unapproved modifications to management contracts "void." 25 C.F.R. § 535.1 And the Eighth Circuit has enforced this provision by refusing to give unapproved modifications legal effect while enforcing the approved management contract, provided the management contract addresses the issue. Turn Key Gaming, 164 F.3d at 1094-95;

11

Mo. River Servs., 267 F.3d at 853. Here, the approved management contract controlled the issue before the Tribal Court, which was the funding of and disbursement from the OER account. The Eighth Circuit, as well as other federal courts, have determined to be void oral amendments to management contracts not approved by the NIGC, and have made that determination without NIGC input. There was no impediment to the Rosebud Sioux Tribal Court's jurisdiction to declare that the oral modification had no legal effect. Indeed, the management contract expressly called for any dispute under the contract to "first be initiated in Rosebud Sioux Tribal Court." Doc. 9-1 at 63.

A review of the NIGC approval process reveals no impediment to a Tribal Court's jurisdiction to declare an unapproved oral modification of a casino management contract void without referring the matter to the NIGC. The Chairman of the NIGC "has exclusive authority to determine a contract's compliance with IGRA and its regulations." Bruce H. Lien Co. v. Three Affiliated Tribes, 93 F.3d 1412, 1420 (8th Cir. 1996). The "sole focus" of the Chairman's "paper review" is "to test the sufficiency of the documents submitted to the Secretary of the Interior in the first instance and to review whether the management agreement meets the required contents specified under IGRA." Id. at 1418 (internal quotation marks and brackets omitted). For example, the Chairman will ensure in his review that the "interested parties" have submitted to and passed background checks and that the documents contain necessary requirements as to the permitted compensation and contract length. See id. "Despite the breadth of the approval and review process, passing on the legal validity of the document (as opposed to approval for a contract seemingly in compliance with IGRA and the regulations) is not within the scope of the administrative bodies." Id.

Colombe argues that if:

12

> [A] tribe wishes to "void" a contract on the ground that it was a contract not submitted for approval as required by IGRA ... then the Tribe could request a hearing before the Chairman on the matter pursuant to § 2711(f), after which appeal could be taken pursuant to § 2714. If the Tribe wished to recover money from BBC under the theory that its admitted mutual agreement regarding the OER was void for want of NIGC approval, then the Tribe's remedy was to request a hearing before the Chairman of NIGC.

Doc. 49 at 7-8 (internal citations and quotation marks omitted). Colombe cites <u>United States ex rel. The Saint Regis Mohawk Tribe v. President R.C.—St. Regis Mgmt. Co.</u>, 451 F.3d 44 (2nd Cir. 2006), to support his argument that only the NIGC has jurisdiction to determine whether the NIGC's approval of the modification was required. Doc. 49 at 6. The <u>Mohawk Tribe</u> case supports Colombe's argument and is difficult to distinguish. In <u>Mohawk Tribe</u>, a casino developer entered into a management contract to construct and operate a casino with a tribe. 451 F.3d at 46. The management contract was approved by the Chairman of the NIGC. <u>Id.</u> Pursuant to the management contract, the developer entered into a construction contract with a construction company to build the casino for fourteen million dollars. <u>Id.</u> This construction contract was not submitted to the NIGC for approval. <u>Id.</u> A year after the casino opened, and with several years remaining on the management contract, the tribe fired the developer. <u>Id.</u> The tribe then brought a *qui tam* action asking a federal court to determine that the construction contract was "null and void" because it was an unapproved "collateral agreement" to the management contract and thus had no effect. <u>Id.</u> at 47, 50-51. The Second Circuit held it was without jurisdiction to decide whether the construction contract is void for failure to get NIGC approval because the tribe failed to exhaust IGRA's remedies by not allowing the NIGC to pass on the contract's validity first. <u>Id.</u>

The Second Circuit's holding in <u>Mohawk Tribe</u> that it lacked jurisdiction to declare

13

whether an agreement is subject to NIGC approval is in apparent conflict with Eighth Circuit precedent and cases from other federal courts that allow courts to determine whether a modification or amendment is subject to NIGC approval process, to pass on the legal validity of unapproved contracts and modifications, and, ultimately, to give unapproved modifications of casino management contracts no legal effect. See e.g., Mo. River Servs., 267 F.3d at 853-54; Wells Fargo Bank, 658 F.3d at 686. In short, under Eighth Circuit authority, BBC "assumed the risk of proceeding without having submitted all documents to the Chairman." Casino Magic, 293 F.3d at 425. The Eighth Circuit, whose precedent this Court must observe, has held that an unapproved modification to a management contract is without legal effect and that courts may determine that issue. Thus, the Tribal Court, the tribunal the Contract specifically stated to have initial authority to rule on disputes under the Contract, Doc. 1 at 63; see also Montana v. United States, 450 U.S. 544, 565-66 (1981) (recognizing tribal authority to regulate "nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements"); Strate v. A-1 Contractors, 520 U.S. 438, 453 (1997) (finding tribal jurisdiction extends where regulatory authority under Montana exists), had jurisdiction to declare the modification void.

### B. Nature of this Action & IGRA

Colombe argues that the "Tribe's claims in its lawsuit against BBC in tribal court that the agreement to fund the OER was a violation of IGRA" are not properly before the Tribal Court because IGRA does not create a "private right of action for an alleged IGRA violation." Doc. 49 at 8. Colombe contends that the "proper venue to seek a remedy for a claimed IGRA violation is the NIGC." Doc. 49 at 8.

IGRA does not create a general private right of action for aggrieved parties to assert

other than the private rights of action that Congress included explicitly within IGRA. See Tamiami Partners, Ltd. By & Through Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Florida, 63 F.3d 1030, 1049 (11th Cir. 1995) (outlining the explicit private rights of action that IGRA provides for and declining to read into IGRA additional private rights of action); Hein v. Capitan Grande Band of Diegueno Mission Indians, 201 F.3d 1256, 1260 (9th Cir. 2000) ("[W]here IGRA creates a private cause of action, it does so explicitly . . . . Where a statute creates a comprehensive regulatory scheme and provides for particular remedies, courts should not expand the coverage of the statute."). Thus, direct actions by private parties brought under IGRA to enforce its provisions will be dismissed unless IGRA explicitly authorizes such an action. See Tamiami Partners, 63 F.3d at 1049 (dismissing plaintiff's claim that a tribe failed to issue gaming licenses as IGRA requires because IGRA did not authorize a suit to enforce that IGRA provision); Montgomery v. Flandreau Santee Sioux Tribe, 905 F.Supp. 740, 744 (D.S.D. 1995) (dismissing claims that a tribe violated IGRA's provision governing gaming fund disbursement to tribal members because IGRA did not authorize that type of private cause of action to enforce that IGRA provision).

Neither this action nor the underlying Tribal Court actions sought to enforce an IGRA provision or some claim not authorized by IGRA. Rather, the earlier Tribal Court action alleges that BBC is in breach of the Contract, not in breach of an IGRA provision. The Contract between Colombe and the Tribe provides that "any litigation relating to a dispute over the terms, rights or obligations set forth in this agreement shall first be initiated in Rosebud Sioux Tribal Court." Doc. 9-1 at 63. The underlying Tribal Court case was in the nature of a contract dispute, with the Tribe attempting to enforce its approved management contract and BBC defending on the basis of an oral and unapproved modification. Such an action did not need to

be explicitly authorized by IGRA.

Therefore, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment, Doc. 48, is denied. It is further

ORDERED that Defendants' Motion for Summary Judgment, Doc. 58, is granted.

Dated January 18th, 2013.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE